IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) I.C. INTELLIGENCE, LLC<br>        Plaintiff<br><br>v.<br><br>(1) SHOWNATION, LLC<br>(2) YONNE TIGER<br><br>        Defendants | CASE NO.: 25-cv-00636-MTS<br><br>SECTION<br><br>JUDGE:<br><br>MAGISTRATE:<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff IC Intelligence, LLC ("IC Intelligence") brings this Complaint ("Complaint") against Defendants ShowNation, LLC ("ShowNation") and Yonne A. Tiger ("Tiger"), and as cause therefor states:

## INTRODUCTION

1. IC Intelligence brings this action to stop Shownation, and its owner and principal, Tiger, from misappropriating its proprietary and confidential information and trade secrets to create and sell a competing software product and to recover damages resulting from their unlawful conduct.

2. IC Intelligence is a software solutions provider founded in 2012. The company specializes in the development and licensing of its proprietary platform for Customer Relationship Management (CRM) and Host Management, tailored to the gaming and hospitality industry. Its premier product, "Spotlight," was a pioneering solution in the market, being the first to integrate operational, analytical, collaborative, and strategic CRM methodologies into a unified, real-time

ecosystem. The platform is specifically designed to provide clients and end-users with the capability to enhance guest experience metrics, cultivate brand loyalty, and drive significant revenue growth.

3. Defendant Tiger is a descendant of the Muscogee (Creek) Nation Tribe of Oklahoma, and as a lawyer, she promotes herself as specializing in Native American law and helping clients navigate the laws of different tribal nations. In 2014, IC Intelligence formally engaged Tiger as its tribal counsel to assist IC Intelligence in negotiating service contracts to bring Spotlight to tribal casinos. In this capacity, Tiger had direct access to Spotlight's underlying proprietary software as well as IC Intelligence's confidential information, including its customers and service contracts.

4. Tiger is also the owner and principal of Defendant, ShowNation, a company based in Tulsa, Oklahoma that was originally formed, in 2013, to provide promotional products to casinos and gaming institutions, including player gifts and hospitality products.

5. Over the course of her representation, Tiger obtained firsthand knowledge of IC Intelligence's business model, processes, and procedures, including the commercial success of Spotlight. Upon information and belief, Tiger thereafter conspired with present and past employees of IC Intelligence, to gain access to IC Intelligence's confidential and proprietary information with the specific intent to build a comparable CRM and Host Management software for ShowNation that directly competes with Spotlight.

6. In May 2024, ShowNation succeeded in its ill-gotten efforts, commercially releasing its competing CRM product called "Scout" at a casino and business owned by the Muscogee (Creek) Nation Tribe of Oklahoma. The similarities between plaintiff's "Spotlight" product and Defendants' "Scout" product are striking, and many of these features could not have

been replicated without using IC Intelligence's proprietary confidential information and trade secrets.

7. Based on Defendants' unlawful conduct, IC Intelligences asserts claims for: Violation of the Defend Trade Secrets Act; Violation of the Oklahoma Uniform Trade Secrets Act; Violation of the Oklahoma Deceptive Trade Practices Act; Unjust Enrichment; Conversion; and Breach of Fiduciary Duties of Loyalty and Due Care.

## PARTIES

8. Plaintiff IC Intelligence, LLC is a Delaware limited liability company, with a principal place of business in Shreveport, Louisiana.

9. Defendant Tiger is a natural person of the age of majority who is, upon information and belief, domiciled in Tulsa, Oklahoma.

10. Defendant ShowNation is an Oklahoma domestic limited liability company, with a principal place of business in Tulsa, Oklahoma.

## JURISDICTION AND VENUE

11. Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331. More specifically, this action arises under the Defend Trade Secrets Act of 2016, 18 U.S.C. §1836, and this Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. §1367.

12. This Court has personal jurisdiction over Defendants, because among other bases, both Defendants are located in this District.

13. Venue in this district is proper pursuant to 28 U.S.C. §1391 because all Defendants reside in this district, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## FACTS

### IC Intelligence's Business and Trade Secrets

14. Through years of research and development, IC Intelligence, LLC has developed software product offerings that can meet its customers' needs. The hallmark product offering has and continues to be its Customer Relations Management (CRM) and Host Management software platform known as "Spotlight," which provides a unified real-time ecosystem that integrates operational, analytical, collaborative, and strategic CRM methodologies to enhance guest experiences and drive brand loyalty and revenue growth.

15. Spotlight was the first unified casino real-time CRM and host management software platform specifically developed for the gaming industry, addressing a market that had a real need for maintaining and building customer experience and journey with the brand to drive loyalty and revenue growth. The platform is uniquely tailored to suit the needs of its gaming industry customers, which have become the largest source of revenue for IC Intelligence, LLC. The platform's capabilities swiftly identifies both gaming and non-gaming behaviors exhibited by guests, ensuring the prompt delivery of real-time patron information and analytics to the gaming customer's end users, guest facing teams responsible for driving revenue. IC Intelligence's proprietary Spotlight software enables its customers to respond adeptly to the specific preferences, needs, and expectations of its guests, which leads to increased visitation, higher spending, improved guest experiences, brand loyalty, and sustained revenue growth for its customers.

16. Spotlight and other related product offerings incorporate proprietary and confidential company information, including data received from its customers, and IC Intelligence's competitive position largely rests on protecting its confidential business information.

17. IC Intelligence takes substantial care to keep its confidential information out of its competitors' hands, including having its employees execute confidentiality agreements and implementing security measures to protect unauthorized access to proprietary software and customer data.

18. For example, IC Intelligence required all its employees to sign a Confidentiality, Covenant Not to Compete, and Non-Solicitation Agreement and Assignment. A copy of the Agreement is attached as **Exhibit 1**. The Agreement defines "Confidential Information" broadly and further states as follows:

> Employee agrees that he will safeguard and not disclose or make use of any such Confidential Information except as may be required in the furtherance of his/her responsibility as an employee of Company, and that upon the termination of his/her employment with Company for any reason, or upon Company's earlier request, Employee shall immediately return and deliver to Company any and all Confidential Information, including all copies, replicas, or duplications thereof, which Employee may then possess or have under Employee's control. After receiving any such request, Employee shall not retain any materials relating to any Confidential Information returned to Company. This agreement by Employee not to disclose or make unauthorized use of Confidential Information shall survive any termination of this Agreement.

19. To protect its confidential information in the hands of its customers, IC Intelligence requires all customers to execute a confidential subscription agreement to protect the inadvertent or wrongful use or disclosure of IC Intelligence's confidential information, including its underlying software, its code, and capabilities.

20. In sum, IC Intelligence's confidential and proprietary information as set forth in its respective agreements with employees and customers, including IC Intelligence's business opportunities, customer lists, technical know-how, research and development efforts, and technical data ("Confidential Information"), is valuable because it is kept secret. In the hands of another entity or person, the information can be used to exclude IC Intelligence from business opportunities, which has the threat of irreparably harming IC Intelligence.

**Tiger's Relationship with IC Intelligence**

21. Tiger holds herself out as a lawyer specializing in Native American law and helps clients navigate the complex laws and rules associating with tribal nations.

22. In 2014, IC Intelligence engaged Tiger as its tribal counsel to help IC Intelligence negotiate service contracts with various tribal casinos and gaming institutions.

23. At the time, in addition to being a lawyer, Tiger had formed ShowNation, a company focused on providing promotional products to various tribal casinos and gaming institutions.

24. ShowNation was not in the business of providing any competing products that would present a conflict with IC Intelligence.

25. Rather, IC Intelligence hoped that Tiger's expertise and relationships with various tribal nations would be of assistance in getting Spotlight into tribal casinos.

26. Tiger assisted IC Intelligence in negotiating several service contracts with various tribal nations. Throughout the negotiation process, Tiger gained access to IC Intelligence's Confidential Information, including the underlying software for Spotlight, its customer lists, customer data, and pricing data. All communications between Tiger and IC Intelligence were privileged attorney-client communications and that privilege was never waived.

**Defendants' Hire Former IC Intelligence Executive**

27. Defendants began to conspire with former employees of IC Intelligence to gain access to IC Intelligence's Confidential Information, including hiring one of IC Intelligence's former executives, Ian V. Bassett ("Bassett")

28. Bassett was an executive, managing partner, and board member within IC Intelligence, and in this role, he had special access to IC Intelligence's Confidential Information,

including but not limited to the underlying software code, SSIS packages, and data intelligence for the Spotlight product offerings as well as customer lists, data intelligence, logic, and augmented third-party data intelligence.

29. Bassett was subject to an Employee Confidentiality and Intellectual Property Agreement (the "2016 Agreement") that ensured the continued protection of company Confidential Information and confirmed that any technological developments by Bassett during his employment were assigned and owned by IC Intelligence. A copy of the 2016 Agreement is attached as **Exhibit 2**.

30. The 2016 Agreement defines "Confidential Information" broadly and further states:

> Employee agrees that any such information and materials will be maintained in secrecy and will not, except to the extent authorized by Employer in writing, knowingly use such information and materials for any purpose other than to provide services to Employer in connection with Employee's employment thereby. Employee will use all reasonable diligence to prevent unauthorized use or disclosure by Employee. Employee will not alter or obliterate any notice of any proprietary right of Employer on any copy of the Confidential Information. Employee specifically covenants not to usurp any corporate opportunities belonging to Employer.

31. The 2016 Agreement further required Bassett to irrevocably assign to IC Intelligence "all right, title, and interest in an to all Work Product and Intellectual Property Rights" to any products developed by Bassett during his employment.

32. Over the next couple years, Bassett began to ignore his fiduciary duties to the company and act, in bad faith, to harm the company.

33. Specifically, on or about January 11, 2018, Bassett, without authorization and in excess of his granted authority, accessed the company email account of IC Intelligence's Chief Executive Officer (CEO). Bassett fraudulently modified administrative permissions and logs to obtain confidential IC Intelligence banking information and account passcodes. Utilizing this

illicitly obtained information, Bassett initiated an unauthorized transfer of approximately twenty-five thousand dollars ($25,000) from IC Intelligence's primary operating account.

34. In an apparent effort to avoid liability for his actions, Bassett subsequently fled the US jurisdiction, establishing residence in Almeria, Spain. As a direct result of the foregoing misconduct, including the unauthorized misappropriation of corporate funds and abandonment of his post, IC Intelligence formally terminated Bassett's employment for cause in 2018.

35. Following his termination, Basset's whereabouts were largely unknown until Defendants partnered and hired Bassett with the specific intent to capitalize on his insider knowledge of IC Intelligence to build a competing CRM and Host Management product.

36. In addition to Bassett, ShowNation also engaged in targeting and hiring other employees / contractors from IC Intelligence, including at least one sales representative, who were all subject to confidentiality agreements, but nevertheless breached those agreements to share Confidential Information with Defendants.

37. In May 2024, ShowNation built and commercially released a competing CRM and Host Management product called "Scout." ShowNation's Scout product was deployed at a casino and business owned by the Muscogee (Creek) Nation Tribe of Oklahoma.

38. The similarities in the products are striking and many of these features could not have been replicated without using IC Intelligence's proprietary Confidential Information and trade secrets.

39. The Scout CRM and Host Management platform functions very similar to Spotlight, and upon information and belief, this functionality could not have been developed without the unauthorized use of IC Intelligence's Confidential Information, including its proprietary data, code repositories, and client databases.

40. Not only is the Scout CRM and Host Management product nearly identical in functionality, but the marketing materials used by ShowNation include verbatim language from marketing materials used by IC Intelligence.

41. ShowNation misappropriated IC Intelligence's Confidential Information to develop a nearly identical product and is now using that product to unfairly compete against IC Intelligence.

## Count I

## Violation of Defend Trade Secrets Act, 18 U.S.C. §1836

42. IC Intelligence incorporates the allegations set forth in the preceding paragraphs as if set forth herein.

43. IC Intelligence's Confidential Information constitutes trade secrets within the meaning of Defend Trade Secrets Act, 18 U.S.C. §1836.

44. IC Intelligence is headquartered in Louisiana but has customers throughout the United States and provides those customers with its proprietary CRM and Host Management software solutions and services that incorporate and use company trade secrets.

45. Defendants acquired IC Intelligence's trade secrets by improper means.

46. Defendants deliberately, and with bad faith intent, hired former IC Intelligence employees, contractors, and executives, and directed them to abscond with IC Intelligence records without permission and in violation of their own confidentiality agreements and duties to the company, including stealing valuable customer lists, underlying software data, software code, design logic and roadmaps, and customer data repositories that are critical to the functionality of IC Intelligence's Spotlight software offerings.

47. Defendants have used IC Intelligence's trade secrets, without IC Intelligence's express or implied consent, in connection with developing and launching the competing "Scout"

CRM and Host Management software, despite knowing or having reason to know that the trade secrets were acquired by improper means.

48. Defendants' acts of misappropriation were willful and malicious.

49. As a direct and proximate result of Defendants' acts of misappropriation, IC Intelligence has suffered and will suffer irreparable harm and damages. Moreover, Defendants gained an unfair competitive advantage and other unjust enrichment through the misuse of IC Intelligence's trade secrets.

50. Under the Defend Trade Secrets Act, IC Intelligence is entitled to and requests preliminary and permanent injunctive relief against Defendants to prohibit their actual and threatened misappropriation of IC Intelligence's trade secrets.

51. Under the Defend Trade Secrets Act, IC Intelligence is entitled to and requests an award of damages in its favor for actual loss caused by the misappropriation, damages for all unjust enrichment caused by the misappropriation that is not addressed in computing damages for actual loss, and damages measured by imposition of liability for a reasonable royalty for the unauthorized disclosure or use of IC Intelligence's trade secrets.

52. Under the Defend Trade Secrets Act, as a result of Defendants' willful and malicious misappropriation, IC Intelligence is entitled to and requests exemplary damages in an amount not more than two times IC Intelligence's actual damages, plus reasonable attorneys' fees.

### Count II

**Violation of Oklahoma's Uniform Trade Practices Act, 78 O.S. §85 *et seq*.**

53. IC Intelligence incorporates the allegations set forth in the preceding paragraphs as if set forth herein.

54. IC Intelligence's Confidential Information constitutes trade secrets within the meaning of the Oklahoma's Uniform Trade Secrets Act, 78 O.S. §85 *et seq*.

55. Defendants acquired IC Intelligence's trade secrets by improper means. Defendants obtained IC Intelligence records without permission, including stealing valuable customer lists, underlying software code, data and customer data repositories that are critical to the functionality of IC Intelligence's Spotlight software offerings.

56. Defendants intended to use and have used IC Intelligence's trade secrets, without IC Intelligence's express or implied consent, in connection with developing and launching the competing "Scout" CRM and Host Management software offering on behalf of ShowNation, despite knowing or having reason to know that the trade secrets were acquired by improper means.

57. Defendants' acts of misappropriation were willful and malicious.

58. As a direct and proximate result of Defendants' acts of misappropriation, IC Intelligence has suffered and will suffer irreparable harm and damages. Moreover, Defendants gained an unfair competitive advantage and other unjust enrichment through the misuse of IC Intelligence's trade secrets.

59. Under the Oklahoma Uniform Trade Secrets Act, IC Intelligence is entitled to and requests preliminary and permanent injunctive relief against Defendants to prohibit their actual and/or threatened misappropriation of IC Intelligence's trade secrets.

60. Under the Oklahoma Uniform Trade Secrets Act, IC Intelligence is entitled to and requests an award of damages in its favor for actual loss caused by the misappropriation, and damages for all unjust enrichment caused by the misappropriation that is not taken into account in computing damages for actual loss.

61. Under the Oklahoma Uniform Trade Secrets Act, as a result of Defendants' willful and malicious misappropriation, IC Intelligence is further entitled to exemplary damages and requests an award of its reasonable attorneys' fees.

### Count III

### Violation of Oklahoma's Deceptive Trade Practices Act, 78 O.S. § 51 *et seq.*

62. IC Intelligence incorporates the allegations set forth in the preceding paragraphs as if set forth herein.

63. Defendants' actions as alleged herein constitute unfair competition and unfair or deceptive acts or practices in the conduct of trade or commerce, including but not limited to misappropriation of IC Intelligence's trade secrets and breaches of fiduciary duty.

64. Defendants' actions as alleged herein have been immoral, unethical, oppressive, unscrupulous, and substantially injurious to IC Intelligence.

65. Defendants have therefore violated the Oklahoma's Deceptive Trade Practices Act, 78 O.S. § 51 *et seq*.

66. As a direct and proximate result of Defendants' unfair competition and/or unfair or deceptive acts or practices, IC Intelligence has suffered an ascertainable loss of money and property, for which Defendants are liable.

67. Defendants are further entitled to an award of reasonable attorneys' fees and costs.

### Count IV

### Unjust Enrichment

68. IC Intelligence incorporates the allegations set forth in the preceding paragraphs as if set forth herein.

69. By virtue of their conduct alleged herein, Defendants have been enriched by their unlawful acquisition, use, and disclosure of IC Intelligence's Confidential Information.

70. As a consequence of Defendants' unlawful acquisition, use, and/or disclosure of IC Intelligence's Confidential Information, IC Intelligence has suffered an impoverishment.

71. Defendants' enrichment and IC Intelligence's impoverishment were without justification or cause.

72. In the event IC Intelligence is found to have no other remedy at law, then Defendants are bound to compensate IC Intelligence in an amount equal to Defendants' enrichment or IC Intelligence's impoverishment, whichever is less.

## Count V

### Conversion

73. IC Intelligence incorporates the allegations set forth in the preceding paragraphs as if set forth herein.

74. IC Intelligence's Confidential Information constitutes valuable property belonging to IC Intelligence.

75. As alleged herein, Defendants acquired the Confidential Information in an unauthorized manner.

76. As alleged herein, Defendants are in wrongful possession of the Confidential Information.

77. As alleged herein, Defendants took and exercised control over the Confidential Information without authorization, and are now using or planning to use the Confidential Information in direct competition with IC Intelligence.

78. As alleged herein, Defendants have wrongfully exercised dominion and control over the Confidential Information.

79. As alleged herein, Defendants have used and converted for their own benefit the Confidential Information.

80. IC Intelligence has demanded that Defendants return the Confidential Information, but Defendants have not done so.

81. IC Intelligence has suffered damages as a direct and proximate result of Defendants' conversion of the Confidential Information.

**Count VI**

**Breach of Fiduciary Duties of Loyalty and Due Care**

82. IC Intelligence incorporates the allegations set forth in the preceding paragraphs as if set forth herein.

83. As an attorney for IC Intelligence, Tiger owed IC Intelligence a fiduciary duty, including duties of loyalty and due care.

84. Tiger's duties of loyalty and due care to IC Intelligence included, without limitation, duties: not to act in opposition to IC Intelligence's interests; not to use her position with IC Intelligence for personal gain at the expense of IC Intelligence; not to use IC Intelligence's property and information, including but not limited to the Confidential Information, for her own purpose or for the purpose of any third party; to disclose any conflicts between her current business interests and those of IC Intelligence; and not to misappropriate IC Intelligence's trade secrets.

85. Tiger's fiduciary duty not to use or disclose IC Intelligence's Confidential Information for her own benefit or the benefit of a third party continued after the conclusion of her representation of IC Intelligence.

86. By virtue of the conduct alleged herein, Tiger breached her fiduciary duties to IC Intelligence.

87. IC Intelligence has suffered damages as a direct and proximate result of Tiger's breaches of fiduciary duty.

## Injunctive Relief

88. IC Intelligence incorporates the allegations set forth in the preceding paragraphs as if set forth herein.

89. Pursuant to the Defendant Trade Secrets Act, 18 U.S.C. §1836(b)(3)(A), and the Oklahoma Uniform Trade Secrets Act, 78 O.S. §85 *et seq*, IC Intelligence is entitled to an injunction preventing any actual or threatened misappropriation of its trade secrets by Defendants, their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of the foregoing (collectively, "Covered Persons").

90. This injunctive relief should include, without limitation, an Order prohibiting the Covered Persons from using or disclosing any of IC Intelligence's trade secrets, including but not limited to its Confidential Information, in any manner. Further, the injunctive relief should include an Order requiring the Covered Persons to return to IC Intelligence, and not keep, any and all trade secrets of IC Intelligence, including but not limited to any Confidential Information.

91. IC Intelligence has a substantial likelihood of prevailing on the merits of its claims.

92. Unless the Covered Persons are enjoined from the conduct described herein, there is a substantial threat that IC Intelligence will continue to suffer irreparable harm, including loss and misuse of its Confidential Information, loss of good will, and financial losses that are presently not calculable.

93. The irreparable harm that IC Intelligence will suffer if injunctive relief is denied outweighs the potential harm (if any) to Defendants if injunctive relief is granted.

94. Granting the requested injunctive relief will not disserve the public interest.

95. IC Intelligence has no adequate remedy at law.

96. Consequently, IC Intelligence is entitled to injunctive relief as set forth herein.

WHEREFORE, Plaintiff IC Intelligence, LLC respectfully requests that this Court:

1. Enter judgment in its favor and against Defendants, and order Defendants to pay damages to Plaintiff, in an amount to be proved at trial, plus interest, costs, exemplary damages, and attorneys' fees as allowed by law and/or contract;

2. Enter a permanent injunction ordering that Defendants, and their respective officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of the foregoing (collectively, "Covered Persons") are restrained and enjoined from, directly or indirectly, disclosing or making any use of any trade secrets, confidential information, knowledge, data or other information of IC Intelligence, including but not limited to business policies; pricing, marketing, distribution, finances, and sales information and business plans; customized software and marketing tools; customer lists; lists of suppliers; training materials, including methodologies, processes, and practices developed and/or used by IC Intelligence; management and administrative systems; intellectual property rights; license agreements for use of third-party intellectual property; and pricing for IC Intelligence (collectively, "Confidential Information"); and

3. Grant Plaintiff such other and further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

Dated: November 21, 2025

Respectfully submitted,

/s/ Stephen Kepper
Stephen Kepper (#34618)
INTELLECTUAL PROPERTY
CONSULTING, L.L.C.
400 Poydras Street, Suite 1400
New Orleans, LA 70130
Tel.: (504) 322-7166
Fax: (504) 322-7184
skepper@iplawconsulting.com

Attorney for Plaintiff IC Intelligence, LLC