# United States District Court
## for the Northern District of Oklahoma

Case No. 25-cv-636-JDR-MTS

I.C. Intelligence LLC,

*Plaintiff,*

*versus*

ShowNation LLC; Yonne Tiger,

*Defendants.*

## OPINION AND ORDER

Plaintiff I.C. Intelligence LLC sued Defendants ShowNation LLC and Yonne Tiger for misappropriation of trade secrets in relation to I.C.'s host management and customer relationship software. Dkt. 1 at 1.[1] Defendants have moved to dismiss I.C.'s complaint, arguing that the statute of limitations precludes I.C.'s claims, and that both I.C.'s state-law claims and all I.C.'s claims against Ms. Tiger are barred by Oklahoma law. Dkt. 11 at 2. The Court denies the motion to dismiss I.C.'s claims against ShowNation but grants the motion to dismiss its claims against Ms. Tiger. I.C. is granted leave to amend its complaint by June 29, 2026.

### I

I.C. produces Spotlight, a customer relationship management software program that is sold to casinos and other entities within the gaming industry to manage guests and drive revenue. Dkt. 1 at 4. In 2014 I.C. hired Ms. Tiger, an Oklahoma attorney, to help "negotiate service contracts with

---

[1] All citations use CM/ECF pagination.

No. 25-cv-636

various tribal casinos and gaming institutions." *Id.* at 6. Ms. Tiger also operates ShowNation, which "focuse[s] on providing promotion products to various tribal casinos and gaming institutions" but did not have any products that competed with Spotlight as of 2014. *Id.* Ms. Tiger assisted I.C. in negotiating contracts with multiple tribal nations. *Id.* During that process she had access to Spotlight and I.C.'s confidential customer and pricing data. *Id.* In 2024, ShowNation released Scout, a competing customer relationship management software product similar to Spotlight. *Id.* at 8. I.C. alleges that Scout was built with information illicitly taken from I.C. and is "nearly identical" to Spotlight. *Id.* at 9. I.C. also alleges that ShowNation's marketing materials "include verbatim language from [I.C.'s] marketing materials." *Id.*

I.C. alleges that, in developing Scout, Defendants violated the federal Defend Trade Secrets Act, the Oklahoma Uniform Trade Secrets Act, and the Oklahoma Deceptive Trade Practices Act, and separately asserts claims for unjust enrichment, conversion, and breach of fiduciary duty. *Id.* at 9-15.

## II

To survive a motion to dismiss, I.C.'s complaint must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins*, 519 F.3d at 1247. In other words, the Court must determine whether, taking all well-pleaded allegations as true, the complaint provides a "reason to believe that [I.C.] has a reasonable likelihood of mustering factual support for its claims." *Ridge at Red Hawk, L.L.C. v. Schnieder*, 493 F.3d 1174, 1177 (10th Cir. 2007).

## A

ShowNation and Ms. Tiger argue that I.C.'s claims are barred by the statute of limitations because I.C. sent them a cease-and-desist letter on September 10, 2021, four years before I.C. filed its complaint. Dkt. 11 at 3-6. But

2

No. 25-cv-636

their entire argument is predicated on the Court being able to consider the cease-and-desist letter, which was not attached to the complaint. Dkt. 11-1. When deciding a motion to dismiss, the Court cannot consider extrinsic evidence outside the complaint. Fed. R. Civ. P. 12(d); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (holding that consideration of extrinsic material on a motion to dismiss is reversible error). Evidence is extrinsic if it is not mentioned in the complaint or central thereto. *GFF*, 130 F.3d at 1384. The letter upon which Defendants rely is neither mentioned in the complaint nor central to its allegations. Dkt. 1. ShowNation and Ms. Tiger acknowledge the deficiency and request the Court convert their motion to a motion for summary judgment. Dkt. 26 at 1-2.

The Court recognizes it has discretion to convert a motion to dismiss to a motion for summary judgment when a party attaches extrinsic evidence to their motion. *See Prager v. LaFaver*, 180 F.3d 1185, 1188 (10th Cir. 1999) (noting that "in general, a motion to dismiss should be converted to a summary judgment motion if a party submits, and the district court considers, materials outside the pleadings"). But it is not *required* to do so. Conversion is "an inefficient process" that requires the Court to give notice to the parties and allow I.C. "an opportunity to present its own extra pleading evidence." *Navajo Nation v. Urb. Outfitters, Inc.*, 935 F. Supp. 2d 1147, 1157 (D.N.M. 2013). This process is "better left for a motion for summary judgment filed in the normal course" of discovery. *Id.* The Court denies ShowNation's and Ms. Tiger's motion to dismiss on the statute of limitations argument. Defendants may re-urge the argument in a subsequent motion.[2]

---

[2] The Court recognizes there is value in resolving potentially dispositive motions early in litigation. Should the Defendants wish to file a motion for summary judgment on this issue without waiving their ability to file a later motion under Rule 56 of the Federal Rules of Civil Procedure, they must first seek leave of court to do so. N. D. Okla. Loc. Civ. R. 56-1.

## B

Next, ShowNation and Ms. Tiger argue that I.C.'s state-law claims for conversion, unjust enrichment, and breach of fiduciary duty are preempted by the Oklahoma Uniform Trade Secrets Act, which expressly preempts the use of state-law causes of action for "conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." Dkt. 11 at 2; Okla. Stat. tit. 78, § 92-A. I.C. responds that its state-law allegations are not based on trade secrets and are "specifically limit[ed] to non-trade secret confidential information." Dkt. 25 at 12.

In support, I.C. points to the Oklahoma Supreme Court's decision in *American Biomedical Group, Inc. v. Techtrol, Inc.*, 2016 OK 55, ¶ 23, 374 P.3d 820, 827, in which the court held that "[i]f the Legislature had intended to displace a cause of action for misappropriation of business information not falling within the statutory definition of [a] trade secret, it could have done so." Consequently, the Oklahoma Supreme Court held that OUTSA did not preempt torts for misappropriation of general "business information." *Id.* Based on *American Biomedical*, the OUTSA only precludes I.C.'s claims if they relate solely to allegations of trade secret misappropriation.

The OUTSA defines a trade secret as "information, including a formula, pattern, compilation, program, device, method, technique or process, that [(a)] derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and [(b)] is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Okla. Stat. tit. 78, § 86.

I.C.'s complaint describes Spotlight as "provid[ing] a unified real-time ecosystem that integrates operation, analytical, collaborative, and strategic CRM methodologies" by "identif[ying] both gaming and non-gaming behavior exhibited by guests, ensuring the prompt delivery of real-time patron

4

information and analytics" to casinos. Dkt. 1 at 4. I. C. alleges, without explanation, that its "competitive position largely rests on protecting its confidential business information" such as general "data received from its customers." *Id.* I.C. also alleges that it "takes substantial care to keep its confidential information out of its competitors' hands" including requiring "confidentiality agreements" and other "security measures to protect [*sic*] unauthorized access." *Id.* at 5. I.C. does not state what data security measures it takes, only that it has confidentiality agreements with employees and customers. As for Scout, I.C. alleges that "[t]he Scout CRM and Host Management platform functions very similar [*sic*] to Spotlight, and upon information and belief, this functionality could not have been developed without the unauthorized use of [I.C.'s] [c]onfidential [i]nformation, including its proprietary data, code repositories, and client data." Dkt. 1 at 8.

I.C.'s description of Spotlight's capabilities and explanation of why Spotlight's processes derive independent economic value from being kept secret are not fulsome. Dkt. 1 at 4-8. Nor does I.C.'s minimal description show what protections were present for which alleged trade secrets so the Court can determine if those protections were reasonable under the circumstances. Without more, the Court is unable to tell what parts of I.C.'s allegations involve trade secrets protected by the OUTSA and what parts involve intellectual property that does not rise to the level of a trade secret. In its response, I.C. argues that the Court should permit the claims to go forward because those claims involve "non-trade secret confidential information" and admits that it cannot recover for any trade secrets on those claims. Dkt. 25 at 12. I.C. also requests leave to amend its complaint to clarify the issue. *Id.* at 13.

Without more information, the Court cannot identify the trade secrets for which I.C. seeks recovery under the OUTSA and the "non-trade secret confidential information" for which I.C. seeks recovery under its claims for conversion, unjust enrichment, and breach of fiduciary duty. *Id.* at 12. But the Court does not see this as requiring dismissal of the claims. I.C.'s complaint

No. 25-cv-636

states the categories of information in question; the determination of which particular pieces align precisely with which claims is better considered at the summary judgment stage. I.C. seeks to recover for more than just trade secrets, and so the Court will not dismiss its claims on the basis of preemption by the OUTSA.

C

Last, Ms. Tiger argues that I.C.'s claims against her are preempted by Okla. Stat. tit. 12, § 682-B), which reads:

> No suit or claim of any nature shall be brought against any officer, director or shareholder for the debt or liability of a corporation of which he or she is an officer, director or shareholder, until judgment is obtained therefor against the corporation . . . [t]his provision includes, but is not limited to, claims based on vicarious liability . . . nothing herein prohibits a suit or claim against an officer, director or shareholder for their own conduct . . . not within the scope of their role. [3]

This statute "prohibits suits based *solely* on" a defendant's status as an officer, shareholder, or LLC member, and "does not prevent a person from being sued directly for his own conduct." *Dennis v. Good Deal Charlie, Inc.*, No. 20-cv-00295-GKF-JFJ, 2021 WL 815841, at *6 (N.D. Okla. Mar. 3, 2021) (emphasis added). It likewise "does not preclude imposition of personal tort liability on an officer, director, or shareholder for the person's acts outside the scope of his or her role as an officer, director, or shareholder." *Id.*

I.C. alleges that Ms. Tiger had access to I.C.'s confidential data relating to Spotlight. Dkt. 1 at 6. But I.C.'s complaint does not clearly allege that Ms. Tiger used *her* access to the data to develop Scout, nor any facts showing that she did so while acting outside the scope of her employment. I.C. only pleads that Ms. Tiger had access, not that she used that access to misappropriate the Spotlight data and technology. Although I.C. characterizes its

---

[3] Okla. Stat. tit. 12, § 682(C) extends the same protection to LLC members.

No. 25-cv-636

complaint as including this logical step in its response, *see* Dkt. 25 at 11, a logical inference is not a fact, and the Court will not "supply additional factual allegations to round out [I.C.'s] complaint." *Whitney v. New Mexico,* 113 F.3d 1170, 1173-74 (10th Cir. 1997). Without any factual assertion that Ms. Tiger took some action of her own accord that was either itself tortious or was outside the scope of her role at ShowNation, I.C.'s claims against her are precluded by Okla. Stat. tit. 12, § 682-B. The Court grants Ms. Tiger's motion to dismiss the claims against her.

### III

The Court grants ShowNation's and Ms. Tiger's motion to dismiss I.C.'s claims [Dkt. 11] against Ms. Tiger. The Court denies the motion in all other respects. I.C. may amend its complaint to cure the defects identified by this opinion by July 7, 2026.

DATED this 16th day of June 2026.

JOHN D. RUSSELL
*United States District Judge*